NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0033n.06

Case No. 22-2073

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | FILED<br>Jan 24, 2025<br>KELLY L. STEPHENS, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| REGINALD LAMAR CARMAN, | ) | MICHIGAN |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: WHITE, READLER, and MATHIS, Circuit Judges.

READLER, J., delivered the opinion of the court in which WHITE, J., concurred, and MATHIS, J., concurred in part and in the judgment. MATHIS, J. (pg. 7), delivered a separate concurring opinion.

CHAD A. READLER, Circuit Judge. Reginald Lamar Carman stole over a million dollars from several banks and credit unions in Michigan. For those acts, he pleaded guilty to credit union larceny. The district court sentenced him to 18 months in prison. Carman now challenges his sentence as procedurally unreasonable. Seeing no error, we affirm.

I.

Reginald Lamar Carman drove an armored truck for Brink's, a security company that transports cash to financial institutions. In that capacity, he collected "bundles of cash entrusted to Brink's from its Lansing, Michigan facility" and transported those amounts to "cash machines"

owned by banks and credit unions "throughout central Michigan to replenish their supply of currency."

Carman was not a good steward of the money with which he was entrusted. Brink's, as it happens, monitored the cash machines it serviced. In January 2022, the company realized that several credit unions in Michigan had not received their designated cash amounts. That prompted an internal investigation. Video surveillance revealed what happened. Carman took a "bag full of cash" from his armored truck, concealed it within another bag, and then placed that bag in his own vehicle. One theft led to many more. Between November and December 2021, the internal investigation initially revealed, Carman stole $1,060,200 from seven banks and credit unions. When questioned by federal agents, Carman also confessed to stealing an additional $170,000 in 2019 when he worked for Brink's in Chicago. Carman, it bears adding, returned most of the money he took after Brink's discovered his wrongdoing. Including the amount stolen in Chicago, only $225,932.50 remains missing.

Following federal charges, Carman pleaded guilty to one count of credit union larceny, in violation of 18 U.S.C. § 2113(b). The probation office's presentence report assigned Carman a total offense level of 19 and a criminal history category of I, yielding a guidelines range of 30 to 37 months in prison. As relevant here, the guideline for larceny offenses at the time of Carman's plea agreement—§ 2B1.1—started with a base offense level of six and instructed courts to increase the offense level in incremental amounts based on the amount of the "loss." U.S. Sent'g Guidelines Manual § 2B1.1(b)(1) (U.S. Sent'g Comm'n 2021). If, for example, the "loss" was "[m]ore than $550,000" but less than "$1,500,000," Carman's offense level would increase by 14. *Id.* § 2B1.1(b)(1)(H), (I). Section 2B1.1(b)(1) itself did not tell courts how to measure the "loss." Commentary accompanying that guideline, however, did address "the determination of loss."

2

*Id.* § 2B1.1 cmt. n.3 (U.S. Sent'g Comm'n 2021). The "loss," the commentary explained, is the "greater" of the defendant's "actual loss" ("the reasonably foreseeable pecuniary harm that resulted from the offense") or "intended loss" (the monetary harm that he "purposely sought to inflict"). *Id.* (The Sentencing Commission, we note, recently amended § 2B1.1 by moving the commentary's "intended loss" discussion into the Notes to the loss amount table in the Guideline itself. *See* U.S. Sent'g Guidelines Manual app. C, amend. 827 (Nov. 1, 2024). This opinion references the Guidelines and the commentary that existed at the time of Carman's sentence.)

Applying these principles, the probation office's presentence report found that Carman's "intended loss" totaled $1,060,200. That sum reflects the amount Carman stole from the Michigan financial institutions. (The money stolen in Chicago in 2019 is not included in this figure, a point no party contests.) The probation office seems to have presumed that Carman's "actual loss" was the total amount he failed to return, $225,932.50. In view of the commentary to § 2B1.1 instructing that a defendant's total offense level reflect the greater of actual or intended loss, the probation office used Carman's intended loss, $1,060,200. That increased his offense level by 14, leading to a range of 30 to 37 months in prison.

At sentencing, Carman objected to the presentence report's total offense level calculation. According to Carman, "loss," as used in § 2B1.1, meant actual loss, not intended loss. As he saw things, the district court should disregard the commentary's instruction regarding intended loss because that instruction conflicted with the plain text of the guideline. Carman emphasized that if the presentence report had relied solely on his actual loss, $225,932.50, his guidelines range would have dropped to 18 to 24 months. R. 56, PageID 228–29.

The district court generally acknowledged the presentence report's determinations but departed from them in selecting Carman's sentence. After analyzing the sentencing factors listed

in 18 U.S.C. § 3553(a), the district court applied a four-level downward variance, dropping Carman's total offense level to 15 and his sentencing range "to 18 to 24 months." R. 56, PageID 240. That, it bears emphasizing, matched the guidelines range calculation one would reach using the $225,932.50 figure, the sum Carman asked to be used in calculating his sentence. R. 56, PageID 228–29. In effect, the district court believed that Carman's "actual loss [wa]s more important in assessing [his] guilt and punishment." R. 56, PageID 239. The district court then sentenced Carman to 18 months in prison, five years of supervised release, restitution, and a mandatory assessment. That prompted this timely appeal.

II.

Carman believes his sentence is plagued by procedural error. As a matter of procedure, a district court must properly calculate the defendant's guidelines range, treat it as advisory, consider the factors listed in 18 U.S.C. § 3553(a), select a sentence based on facts that are not clearly erroneous, and adequately explain the sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). The district court fell short on this front, Carman contends, because it improperly calculated his guidelines range by using intended rather than actual loss in calculating his offense level. That error, Carman adds, produced an incorrect guidelines range of 30 to 37 months, requiring us to remand his case for a new sentencing hearing. There are two fundamental problems with this argument.

The first (and primary) problem is precedent. In *United States v. You*, we held that the word "loss" in the version of § 2B1.1(b)(1) existing at the time of Carman's sentence includes a defendant's "intended loss." 74 F.4th 378, 397–98 (6th Cir. 2023). That ends Carman's appeal. Under *You*, the district court did not impose a procedurally unreasonable sentence by relying on Carman's intended loss.

Carman, to his credit, recognizes that "*You* is binding on this Court." But he believes that *You* should be overturned "by the Court sitting *en banc*." To that end, as he notes, several judges thoughtfully critiqued *You*'s conclusion. *See, e.g.*, *United States v. Kennert*, No. 22-1998, 2023 WL 4977456, at *4–6 (6th Cir. Aug. 3, 2023) (Murphy, J., concurring); *United States v. Smith*, 79 F.4th 790, 799–800 (6th Cir. 2023) (Nalbandian, J., concurring); *United States v. Boler*, 115 F.4th 316, 329–30 (4th Cir. 2024) (Quattlebaum, J., dissenting). *You* even generated a circuit split. *See United States v. Banks*, 55 F.4th 246, 258 (3d Cir. 2022). In light of this circuit split, the Sentencing Commission, as mentioned, recently amended § 2B1.1 to make plain going forward that the term "loss" would include "intended loss." *See* U.S. Sent'g Guidelines Manual app. C, amend. 827. But none of this changes the stark reality that *You* forecloses Carman's argument to us, a panel of three, that the version of §2B1.1 he was sentenced under did not include "intended loss." *See United States v. Xu*, 114 F.4th 829, 845 (6th Cir. 2024) (explaining that "given *You*'s binding effect—and [the defendant's] acknowledgment in that regard—"a panel cannot reach the defendant's argument that "*You* was wrongly decided."); *United States v. Tellez*, 86 F.4th 1148, 1154 (6th Cir. 2023) (emphasizing that "existing Sixth Circuit law forecloses" the argument that § 2B1.1 does not include "intended" loss).

The second problem is harmless error. When "the record shows that the district court would have imposed its sentence regardless of the Guidelines range, then an error in calculating the Guidelines range is harmless." *United States v. Morrison*, 852 F.3d 488, 491 (6th Cir. 2017). Here, the record reveals that the district court chose its 18-month sentence irrespective of the guidelines range of 30 to 37 months. In sentencing Carman, the district court viewed what it perceived to be Carman's "actual loss [of $225,932.50] [a]s more important in assessing [his] . . . punishment." R. 56, PageID 239; *see also* R. 56, PageID 228–29. To this end, the district court

applied a four-level variance to Carman's total offense level of 19, taking his guidelines range "down to 18 to 24 months[,]" the exact range Carman sought at sentencing, and the one that would have been generated had the presentence report and the district court relied solely on the $225,932.50 loss amount. R. 56, PageID 240. In short, because the district court selected Carman's 18-month sentence regardless of his recommended guidelines range, any purported error was harmless.

Though precedent and harmless error stand in the way of Carman's request to be resentenced, there remains yet a third potential obstacle. It is unclear whether, on this record, overturning *You* would help Carman because, even if the old version of § 2B1.1 allowed us to use only actual loss in calculating Carman's total offense level, that level may remain the same. After all, it at least seems plausible that Brink's suffered an actual loss of more than a million dollars because Carman returned part of the money he stole only after Brink's detected his thefts. *See, e.g.*, *United States v. Lutamila*, No. 22-3068, 2024 WL 2991173, at \*2 (D.C. Cir. June 14, 2024) (per curiam); *United States v. Gulzar*, 92 F.4th 684, 687 (7th Cir. 2024) (per curiam); *see also* § 2B1.1 cmt. n.3(E)(i) (instructing that the "loss" amount should be reduced by the money returned to the victim *before* the victim or the government detected the crime). But in any case, precedent and harmless error foreclose Carman's argument that the district court procedurally erred by relying on intended loss in calculating his sentence.

\*     \*     \*     \*     \*

We affirm.

**MATHIS, Circuit Judge, concurring in part and concurring in judgment.**  I agree with the majority that *United States v. You* bars Reginald Carman's procedural-reasonableness challenge.  *See* 74 F.4th 378, 397–98 (2023).  Given that, I would not reach the harmless-error argument.